UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/20/2021
```

-----------------------------------------------------------------X
                                      :

MOONSUNG KIM,                        :

                                      :

            Plaintiff,        :

                                        :             21-cv-3552 (LJL)

       -v-                           :

                                        :        <u>OPINION AND ORDER</u>

DIANE H. LEE, THE LAW OFFICES OF DIANE H.     :
LEE, P.C., THE KOREA CENTRAL DAILY NEWS,   :
INC. dba THE KOREA DAILY NEW YORK, JOONG-  :
ANG DAILY NEWS CALIFORNIA, INC.,         :

                                        :

            Defendants.      :

                                        :

-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Two motions are pending before the Court.  Defendants Diane H. Lee and The Law

Offices of Diane H. Lee, P.C. (collectively, the "Lee Defendants") move, pursuant to Federal

Rule of Civil Procedure 12(b)(6), to dismiss the complaint for failure to state a claim for relief.

Dkt. No. 25.  Defendants The Korea Central Daily News, Inc. ("KCD") and Joong-Ang Daily

News California ("Joong-Ang," together with KCD, the "KCD Defendants," and together with

KCD and the Lee Defendants, "Defendants") move, pursuant to Federal Rule of Civil Procedure

12(b)(3) and 12(b)(6) to dismiss the complaint for failure to properly allege venue and failure to

state a claim for relief.  Dkt. No. 28.

       For the following reasons, the motions to dismiss are granted.

## BACKGROUND

The Court accepts as true for purposes of this motion the well-pleaded allegations of the complaint and the documents incorporated by reference, as well as those of which the Court can take judicial notice.[1]

This case grows out of a lawsuit filed in June 2018 by Plaintiff Moonsung Kim ("Plaintiff" or "Kim") and others in the United States District Court for the Eastern District of New York, asserting violations of the Fair Labor Standards Act of 1947 ("FLSA") and New York Labor Law ("NYLL").  Dkt. No. 1 ¶ 10 ("Compl.") (citing *Lee v. Korea Central Daily News, Inc.*, 18-cv-3799 (E.D.N.Y.)) (the "Wage Case").

In the Wage Case, Plaintiff alleges that he was employed by the KCD Defendants from 1999 to June 30, 2018, including as manager of the printing department since 2012.  Wage Case, Dkt. No. 12.  He also alleges that he regularly and customarily worked in excess of eight hours a day and forty hours a week without being paid overtime.  The defendants in the Wage Case include KCD and its parent corporation Joong-Ang.  Lee and her firm were counsel in the Wage Case for KCD and Joong-Ang.

During the course of the Wage Case, Plaintiff produced certain documents of the KCD Defendants that he retained during the course of his employment with the KCD Defendants. Compl. ¶¶ 9–11.  These documents included emails Plaintiff wrote to his coworkers regarding the work his department was required to do, as well as daily and weekly logs of the printing

---

[1] This includes documents that have been filed in other lawsuits.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."); *Fullerton Ave. Land Dev. Ltd. v. Cianciulli*, 48 F. App'x 813, 814 n.1 (2d Cir. 2002) (summary order) ("[C]onsideration of . . . court filings and judgments is permissible under this Circuit's well-established rule that a district court may rely upon publicly filed records in deciding a motion to dismiss.").

department showing how many sections of the newspaper are printed and at what time each day and each week. *Id.* ¶¶ 29–30. He kept these documents after the termination of his employment in order to demonstrate the hours he worked for the KCD Defendants in his Wage Case. *Id.* ¶ 30. After the Wage Case was filed, Plaintiff produced the documents during the discovery process in response to the document demands of the KCD Defendants; he had not disclosed them to anyone else. *Id.* ¶¶ 11, 28–29.

Plaintiff was deposed in the Wage Case on August 21, 2020. *Id.* ¶ 32; Dkt. No. 25-4. During the deposition and over his counsel's objection, Plaintiff testified that he had copied records from the KCD Defendants' computer. Dkt. No. 25-4, Ex. B at 159. The examination was conducted by Defendant Lee who asked him questions about the documents he copied and retained after his employment ended. Compl. ¶ 32; Dkt. No. 25-4, Ex. B at 161–62. Specifically, Lee asked Plaintiff whether he knew or understood that copying files from his employer was considered illegal, improper, or to be theft. Compl. ¶ 32; Dkt. No. 25-4, Ex. B at 161–62. Plaintiff testified that he did not know it was illegal or improper. Dkt. No. 25-4, Ex. B at 161–62. When asked whether he had permission to copy the records, Plaintiff's attorney advised him to invoke his Fifth Amendment privilege against self-incrimination, and Plaintiff did so. *Id.* at 163–64. He also invoked his Fifth Amendment privilege in response to other questions regarding the copying of the documents, including whether he copied files from the defendant's computer for the purposes of the litigation. *Id.* at 162–65, 168. The questioning continued on other subjects.

Thereafter, on December 30, 2020, the defendants in the Wage Case filed an answer to the Second Amended Complaint and filed counterclaims against Plaintiff in the Wage Case.

Compl. ¶¶ 40–41; Dkt. No. 25-4, Ex C.[2]  The Answer and Counterclaims were signed by Lee,

from the Law Office of Diane H. Lee, and contained three causes of action against Plaintiff

arising from his deposition testimony.  *See* Dkt. No. 25-4, Ex. C at 11–13.  The first cause of

action for breach of fiduciary duty alleges that Plaintiff falsely reported the hours that he and his

subordinates worked during the relevant time period to benefit himself and did not disclose the

false reporting until his deposition.[3]  The second cause of action is for theft and misappropriation

of KCD's confidential and proprietary information and documents.  *Id.* at 11–12.  It alleges that

starting on or about June 18, 2018 and continuously thereafter, Plaintiff obtained confidential

information belonging to KCD by copying and forwarding its confidential information to his

own device, without disclosing such conduct to KCD.  *Id.*  The third cause of action, for breach

of contract, alleges that the same conduct was in violation of a confidentiality and non-disclosure

agreement between Plaintiff and KCD.  *Id.* at 12.  This counterclaim alleges that such

confidential information includes "personnel information, suppliers, costs of production,

financial information, business plans, customer lists and their contact information."  *Id.*

In this lawsuit, Plaintiff alleges that Defendants retaliated against him for his filing and

prosecution of the Wage Case in violation of Section 15(a)(3) of the FLSA and in violation of

the NYLL.  Compl. ¶¶ 27, 46–49.  Plaintiff alleges that Defendants were not damaged by his

actions and that the counterclaims were filed "solely to retaliate against him" because he filed a

FLSA lawsuit.  *Id.* ¶ 42.  He also alleges that Lee's conduct during Plaintiff's deposition

constituted retaliatory "threats" and "intimidating accusations."  *Id.* ¶ 44.

---

[2] The counterclaims were deemed withdrawn pursuant to an April 1, 2021 minute entry in the
Wage Case and were thereafter the subject of motion practice, with the court ultimately allowing
the defendants in the Wage Case to maintain one of their counterclaims. *See* Wage Case, Dkt.
No. 34, 38–39.
[3] This cause of action does not appear to be at issue in this litigation.

**PROCEDURAL HISTORY**

Plaintiff filed the Wage Case on June 29, 2018, in the United States District Court for the Eastern District of New York, asserting various wage-related claims under FLSA and the NYLL. Compl. ¶ 10; Wage Case, Dkt. No. 1.

Defendants filed an Answer and Counterclaims to the Second Amended Complaint on December 30, 2020, asserting the counterclaims for breach of fiduciary duty, theft and misappropriation, and breach of contract. Dkt. No. 25-4, Ex. C at 11–13; Wage Case, Dkt. No. 22. On March 5, 2021, Plaintiff filed a Third Amended Complaint ("TAC"). Dkt. No. 25-4, Ex. D; Wage Case, Dkt. No. 23. The TAC added claims for retaliation under the FLSA and NYLL nearly identical to the claims asserted here and added the Lee Defendants as defendants there. Dkt. No. 25-4, Ex. D; Wage Case, Dkt. No. 23; *see also* Compl. On April 1, 2021, the Honorable Robert M. Levy held a status conference in the Wage Case. Dkt. No. 25-4, Ex. A. During the conference, the KCD Defendants' counsel (Lee) raised with the Court the timeliness of the TAC and the appropriateness of its claims against her and her firm. *Id.* at 2–7. Judge Levy initially expressed skepticism about whether the alleged conduct constituted retaliation, *id.* at 14–15, but allowed the parties to move, within three weeks or by April 22, 2021, for leave of court for the plaintiffs to file an amended complaint and for the defendants to add the counterclaims asserted in their December 2020 filing, *id.* at 26–32.[4] The amended pleadings were deemed withdrawn pending decisions on the motions to amend.

---

[4] In a colloquy with the Court, counsel for Plaintiff explained when his client was laid off from his work, Plaintiff decided that he needed evidence of the overtime hours he worked for which he was not paid, so he kept documents regarding those hours and then, during the pendency of the Wage Case, he provided those documents to his counsel for production during discovery, and his counsel then produced those documents. Dkt. No. 25-4, Ex. A at 10. As Plaintiff's counsel put it, the KCD Defendants did not keep timecards, "so my client was forced to take those documents so that he can prove his claim during the FLSA lawsuit." *Id.* at 12.

Plaintiff filed the instant action on April 21, 2021.  Dkt. No. 1.  The complaint contains two causes of action.  The first asserts a claim for retaliation against all defendants under the FLSA.  The second asserts a claim for retaliation against all defendants under the NYLL.

On April 22, 2021, the parties in the Wage Case filed their respective letter motions to amend their pleadings.  Wage Case, Dkt. Nos. 34, 35.  In their letter motion, the defendants contended that in June 2018, before his employment was terminated, Plaintiff forwarded to his personal email account the minutes of management meetings he participated in as part of the management team—minutes which allegedly contained confidential information—as well as emails he had exchanged with the payroll department.  Dkt. No. 25-4, Ex. E at 3; Wage Case, Dkt. No. 34 at 3.  The defendants, through their counsel Lee, also stated that Plaintiff had forwarded misappropriated corporate documents to his counsel three days after his deposition in the Wage Case and that Plaintiff's counsel thereafter produced to these documents to the defendants in response to the defendants' document requests.  Dkt. No. 25-4, Ex. E at 2–3; Wage Case, Dkt. No. 34 at 2–3.  The letter also accused Plaintiff of sharing the confidential and proprietary information with other plaintiffs in the Wage Case in violation of his obligations under his employment agreement to maintain the confidentiality of such information for five years after the termination of his employment.  Dkt. No. 25-4, Ex. E at 3–4; Wage Case, Dkt. No. 34 at 3–4.  The plaintiffs' letter motion reported that plaintiffs had chosen not to amend the complaint by adding retaliation claims and to instead amend only by adding two additional individual defendants to the substantive wage and hour claims.  Dkt. No. 25-4, Ex. F; Wage Case, Dkt. No. 35.

On June 18, 2021, the Lee Defendants filed their motion to dismiss the instant action.  Dkt. No. 25.  Plaintiff filed an opposition to the Lee Defendants' motion to dismiss on July 21,

2021, Dkt. No. 32, and the Lee Defendants replied on July 28, 2021, Dkt. No. 34.  The KCD

Defendants filed their motion to dismiss on June 29, 2021.  Dkt. No. 28.  Plaintiff filed his

opposition to that motion on July 21, 2021, Dkt. No. 33, and the KCD Defendants replied on July

28, 2021, Dkt. No. 35.

On October 18, 2021, Judge Levy issued a Report and Recommendation in the Wage

Case on the plaintiffs' motion to amend their complaint and the defendants' motion to amend

their answer and to assert the three counterclaims.  Dkt. No. 36-1, Ex. A; Wage Case, Dkt. No.

38.  He recommended that the plaintiff's motion to amend be denied.  Dkt. No. 36-1, Ex. A;

Wage Case, Dkt. No. 38.  The court concluded that supplemental jurisdiction existed over the

defendants' claim that Plaintiff breached his fiduciary duties by falsifying time records and

accordingly recommended that the motion to add that counterclaim be granted.  Dkt. No. 36-1,

Ex. A at 10–11; Wage Case, Dkt. No. 38 at 10–11.  Judge Levy concluded that the claims for

theft and breach of the confidentiality and non-disclosure agreements did not share a common

nucleus of operative fact with the FLSA claims in the complaint and therefore that the exercise

of supplemental jurisdiction was not justified with respect to those claims.  Dkt. No. 36-1, Ex. A

at 12–13; Wage Case, Dkt. No. 38 at 12–13.  He therefore recommended that the motion to add

those counterclaims be denied.  Dkt. No. 36-1, Ex. A at 13–14; Wage Case, Dkt. No. 38 at 13–

14.  On November 3, 2021, District Judge Ross adopted the Report and Recommendation in the

absence of any objection to it from either party.  Dkt. No. 36-1, Ex. B; Wage Case, Dkt. No. 39.

The counterclaims regarding theft and breach of contract thus are not pending in any court.

## STANDARD OF REVIEW

"[O]n a motion to dismiss for improper venue pursuant to Rule 12(b)(3), 'the burden of

proof lies with the plaintiff to show that venue is proper.'"  *Spiciarich v. Mexican Radio Corp.*,

2015 WL 4191532, at *2 (S.D.N.Y. July 10, 2015) (quoting *Cartier v. Micha, Inc.*, 2007 WL

1187188, at *2 (S.D.N.Y. Apr. 20, 2007)).  "A court applies the same standard of review in Rule 12(b)(3) dismissals as Rule 12(b)(2) dismissals for lack of jurisdiction." *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014).  "The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *E.P.A. ex rel. McKeown v. Port Auth.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).  "[I]n deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper.'"  *Id.* (quoting *McKeown*, 162 F. Supp. 2d at 183).

On a 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).  This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  The ultimate question is whether "[a] claim has facial plausibility[,] [i.e.] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."

*Twombly*, 550 U.S. at 556; *see also Matrixx v. Siracusano*, 563 U.S. 27, 46 (2011).

## DISCUSSION

Each set of Defendants makes separate but overlapping arguments for why the complaint should be dismissed against them.  The KCD Defendants argue that the Court lacks venue over them and that the case should be dismissed for lack of venue and also argue that the complaint fails to state a claim upon which relief can be granted.  The Lee Defendants argue that the complaint fails to state a claim for relief against them.  The Court turns first to the arguments of the KCD Defendants regarding venue.  It then turns to the Lee Defendants' argument that they cannot be sued for retaliation under the FLSA or the NYLL because they are not "employers." Finally, it turns to the arguments of both sets of defendants that the complaint fails to state a claim for relief.

## I.     The KCD Defendants' Motion to Dismiss for Lack of Venue

The KCD Defendants first argue that the Court lacks venue with respect to the case against them.  The KCD Defendants contend that "the only facts pleaded in Plaintiff's Complaint providing an alleged basis for his retaliation claims against them relate to the filing of proposed Counterclaims in the EDNY Action."  Dkt. No. 29 at 12. Then, acknowledging that the deposition that gives rise to a portion of the first and second claims against them and against the Lee Defendants took place physically in the Southern District of New York, they claim that the physical location of the deposition is irrelevant from a qualitative standpoint in a pandemic context, "which saw frequent remote depositions in New York" and where "the participants in Plaintiff's deposition . . . could have been physically located in *any* district . . . during the deposition itself." *Id.* at 13.  They also argue that if the complaint is dismissed as against the Lee Defendants, it should be dismissed for lack of venue against them on the theory that the only

alleged basis for the claim against them is the filing of the counterclaims.  *See id.* at 15.  The motion to dismiss for lack of venue is denied.

Pursuant to 28 U.S.C. § 1391(b)(2), a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  In assessing venue based on Section 1391(b)(2), "a two-part inquiry is appropriate."  *Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 432 (2d Cir. 2005).  First, the court "identif[ies] the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims."  *Id.*  "Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where the suit was filed, that is, whether 'significant events or omissions material to [those] claim[s] . . . have occurred in the district in question.'"  *Id.* (quoting *Gulf Ins. Co. v. Glassbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (alterations retained)).  "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial." *Id.* at 433.

"Where a plaintiff asserts multiple claims, 'venue must be proper as to each of the claims asserted, but a common factual basis between a claim where venue is proper and one where venue is improper may defeat dismissal of a claim for improper venue.'" *Stone #1 v. Annucci*, 2021 WL 4463033, at *13 (S.D.N.Y.  Sept. 28, 2021) (quoting *Cartier*, 2007 WL 1187188, at *2).  However, "when the claims involve multiple different parties, . . . 'venue must be proper . . . as to each party,' and '[t]he fact that a claim for some of the plaintiffs or against some of the defendants arose in a particular district does not make that district a proper venue for parties as to whom the claim arose somewhere else.'"  *Id.* (quoting Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3807 (4th ed.) (alterations retained)).

Plaintiff alleges two claims here for retaliation under federal and state labor laws.  Each claim is based on separate, but related, sets of acts—an allegedly threatening deposition and the subsequent filing of counterclaims arising out of that deposition.  A substantial part of each claim arose in the Southern District of New York; the deposition that is alleged to be retaliatory took place in the Southern District of New York, and it is not alleged to be an insubstantial part of the retaliation.  According to the complaint, during the deposition, "Lee made several threats and made intimidating comments to [Plaintiff]," Compl. ¶ 32, including accusations that Plaintiff "committed theft and took illegal actions," *id.* ¶ 44.  Plaintiff alleges that the questions related to theft were asked for pretextual reasons "to create fear in Kim's mind that he could be criminally prosecuted" and "so that Kim might change his mind and drop his Wage lawsuit against [the KCD Defendants]."  *Id.* ¶ 39.

Although the other act giving rise to the claim of retaliation—the filing of the counterclaims—took place in the Eastern District of New York, that act is not unrelated to the deposition.  The counterclaims were filed after the deposition and arise directly out of the statements made during the deposition.  In any event, venue may be "appropriate in more than one district."  *Gulf Ins. Co.*, 417 F.3d at 356; *see also* Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3806 (4th ed.) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred.  Thus, Section 1381(b)(2) may be the basis for venue in multiple districts.").  "Section 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred."  *Daniel*, 428 F.3d at 432 (quoting *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992).  Nor does it require courts "to determine the 'best venue,' but merely a logical one with a substantial connection to the litigation."  *Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 59

(2d Cir. 2007).  Plaintiff's claim for retaliation is based both on conduct occurring during the deposition as well the subsequent filing of the related counterclaims.  Venue may well be proper in the Eastern District of New York, but that would not diminish the "close nexus" that the deposition bears to Plaintiff's retaliation claims or render venue improper in the Southern District of New York.  *Daniel*, 428 F.3d at 433; *see also Michaels v. Drexler*, 2020 WL 6825692, at \*3–5 (S.D.N.Y. Nov. 20, 2020) (finding venue proper in the Southern District of New York where a substantial part of the events giving rise to the plaintiff's claim occurred there even though a substantial part of the events giving rise to the claim also occurred in Los Angeles, and venue would have thus also been proper in the Central District of California).

The KCD Defendants argue that the physical location of the deposition does not have a bearing on the nature of Plaintiff's claims, pointing out that the deposition could have taken place remotely or outside of the Southern District of New York.  But as the KCD Defendants appear to concede, Dkt. No. 29 at 13, the depositions did not take place remotely.  They took place in Manhattan with Lee and all counsel present in person.  Dkt. No. 25-4, Ex. B.  The fact that the deposition took place in person is not inconsequential.  Accepting the allegations as true, the questions asked at the deposition made Lee "extremely fearful and nervous about potentially facing criminal retribution," Compl. ¶ 33; "he was nervous to begin with to answer questions in [a] tense setting" and "became gravely concerned that [the KCD Defendants] and Lee could take necessary actions to send him to a prison," *id.* ¶ 35.  It stands to reason that whatever impact the deposition questions had, they had in part because Lee asked the questions in person.  It is therefore eminently reasonable for venue to lie in the Southern District of New York, the place where the alleged threats occurred.

It also does not help the KCD Defendants that Lee, and not those defendants, asked the questions at deposition.  Although venue must be judged separately for each claim and for each defendant, Lee was acting at the deposition as counsel for the KCD Defendants, *see id.* ¶ 23, and each count alleges the deposition as a retaliatory act by the KCD Defendants as well as by the Lee Defendants.  That the deposition was conducted by the Defendants in Manhattan—the KCD Defendants as defendants in the Wage Case and the Lee Defendants as counsel to the KCD Defendants—counsels in favor of finding venue proper in the Southern District of New York. *See Daniel*, 428 F.3d at 431–32 (explaining that statutorily defined venue is generally meant to protect defendants against having to litigate in an unfair, inconvenient, or irrelevant forum).  To the extent that the KCD Defendants would wish to argue that Lee was acting *ultra vires* and not on their behalf in asking the questions at the deposition, that argument would go at most to the liability of the KCD Defendants.  It still would not defeat venue in this District.

## II.    The Lee Defendants' Motion to Dismiss for Failure to Allege That They are Employers.

The Lee Defendants argue that the complaint should be dismissed as against them because they are not an employer of Plaintiff who can be held liable under the anti-retaliation provisions of FLSA and the NYLL.  That argument is meritorious.

Section 215(a) of Title 29 makes it:

> unlawful for any person . . . (3) to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a).

In turn, Section 216 of Title 29 sets forth the penalties available for a person who has violated Section 215(a)(3).  "Any person who willfully violates any of the provisions of section

215" is subject to criminal prosecution, and a conviction could result in fines and imprisonment.
29 U.S.C. § 216(a).  Under Section 216(b),

> [a]ny employer who violates the provisions of section 215(a)(3) . . . shall be liable
> for such legal or equitable relief as may be appropriate to effectuate the purposes
> of section 215(a)(3) . . ., including without limitation employment, reinstatement,
> promotion, and the payment of wages lost and an additional equal amount as
> liquidated damages.

29 U.S.C. § 216(b).  "Employer" is defined under Section 203(d) of the FLSA as "any person
acting directly or indirectly in the interests of an employer in relation to an employee."  29
U.S.C. § 203(d).  The definition of "employ" under the FLSA "includes to suffer or permit to
work."  29 U.S.C. § 203(g).

The Supreme Court has held that the reference in Section 203(d) to "any person acting
directly or indirectly in the interest of an employer in relation to an employee" encompasses
persons acting on behalf of the actual employer with respect to the employment relationship.  *See
Falk v. Brennan*, 414 U.S. 190, 192–95 & n.4 (1973).  The Second Circuit uses the "economic
reality" test to determine the scope of employment—that is, whether an entity constitutes an
employer—under Section 203(d).  *See Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir.
1999).  The test requires a court to consider "'whether the alleged employer (1) had the power to
hire and fire the employees, (2) supervised and controlled employee work schedules or
conditions of employment, (3) determined the rate and method of payment, and (4) maintained
employment records.'"  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting
*Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).

In *Diaz v. Longcore*, 751 F. App'x 755 (6th Cir. 2018), the Sixth Circuit considered
whether an employer's outside counsel who filed a counterclaim against employees bringing a
FLSA lawsuit could be considered an "employer" against whom there was a private right of
action under Section 216(b).  The court, reasoning from Supreme Court precedent and from

statutory language, held that outside counsel was not an "employer" and that there was thus no private right of action. *Diaz*, 751 F. App'x at 759. The court pointed out that the Supreme Court has held that the statutory term "employer" should be understood to pick up only those persons acting "on behalf of the actual employer (in the ordinary sentence of the word with respect to the employment relationship, such as by hiring, supervising, paying, and managing employees on behalf of the actual employer." *Id.* at 758 (citing *Falk*, 414 U.S. at 192–93 & n.4). The *Diaz* court also explained that the statutory language refers to employer indistinguishably in the wage-and-hour context and in the anti-retaliation context and noted that Congress knew how to create broader liability when it wished to do so—criminal liability under FLSA applies to "any person" and not just to an employer. *Id.* at 759. Because outside counsel acted on behalf of the employer only with respect to a legal matter and not with respect to the employment relationship, such as by hiring, supervising, paying and managing employees, outside counsel was not an employer against whom a private action under Section 216(b) could lie. *Id.*

The Court is persuaded by *Diaz*, which is consistent with the limited relevant caselaw in this Circuit, *see, e.g., Wanamaker v. Columbian Rope Co.*, 740 F. Supp. 127, 136 (N.D.N.Y. 1990) (dismissing claims against outside counsel defendants because neither met the definition of an agent or employer under the New York State Human Rights Law); *Crawford v. Coram Fire Dist.*, 2015 WL 10044273, at *9 n.4 (E.D.N.Y. May 4, 2015) (observing that "[a]s the economic reality test governs the issue of an employer under both the FLSA and New York Labor law, Plaintiffs' FLSA retaliation claims against the Individual Defendants must also be dismissed"), and the weight of authority from outside the Circuit, *see, e.g.*, *Dellinger v. Science Applications Intern. Corp.*, 649 F.3d 226, 229–30 (4th Cir. 2011) (explaining that "[a]n employee may only sue *employers* for retaliation" and not prospective employers); *Evans v.*

*Dart*, 2021 WL 2329372, at *11 (N.D. Ill. June 8, 2021) (holding that "[t]o incur liability under the FLSA retaliation provision, . . . a person must be acting on behalf of the employer with respect to the employment relationship"); *Leo v. Sarasota County School Bd.*, 2019 WL 2453440, at * 9 (M.D. Fla. Feb. 7, 2019) (explaining that "[t]he relevant provisions of the FLSA reflect that a 'person' may be fined or imprisoned for violating section 215(a)(3) but legal or equitable relief may be obtained against only an 'employer'"); *Poole v. City of Plantation, FL*, 2006 WL 8432490, at *3 (S.D. Fla. May 17, 2006) ("[U]nder the FLSA, a 'person' may be fined or imprisoned for violating section 215(a)(3) whereas legal or equitable relief may only be obtained against an 'employer.'").[5]

Plaintiff admits that the Lee Defendants "are not Kim's employer," Dkt. No. 32 at 4, as that term has been understood in the wage-and-hour context and do not dispute that the Lee Defendants would not satisfy the economic-reality test, *id.* at 11. Plaintiff argues first that the Lee Defendants are subject to Section 215(a)(3) because they fit within the definition of "any person." Dkt. No. 32 at 8. Plaintiff also argues that "under the broad definition of 'employer,' the Lee Defendants are persons who were acting on behalf of the KCD Defendants in relation to Kim." *Id.*

Plaintiff relies primarily on the Ninth Circuit's decision in *Arias v. Raimondo*, 860 F.3d 1185 (9th Cir. 2017). There, the Ninth Circuit held both that an attorney who did not exercise

---

[5] The Eleventh Circuit has explained that prior to Congress's passage of the Fair Labor Standards Amendments of 1977, Pub. L. 95-151, 91 Stat. 1245, 1252 (1977), which provided the private right of action for employees to sue employers for retaliation, "employees had to rely on the criminal and injunctive relief provided in sections 216(a) and 217 to discourage employers from retaliating against them." *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 931 (11th Cir. 2000) (citing *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288, 289 (1960) (holding that courts have the power to award lost wages to employees who have suffered retaliation in cases brought by the Secretary of Labor to enforce the FLSA)).

economic control over the plaintiff but who had retaliated against him was a "person" subject to liability under Section 215(a)(3) and that he was an "employer" against whom the plaintiff could bring a private right of action under Section 216(b).  *Id.* at 1192.  The court reasoned that the substantive economic provisions of FLSA have a different purpose than the anti-retaliation provisions—the wage and hour provisions protect economic rights, and hence it stood to reason that it relied in its application on tests involving economic control and economic realities, whereas the retaliation provision was intended to enable workers to avail themselves of their statutory rights by invoking the legal process designed by Congress to protect them.  *Id.* at 1189– 90.  According to the court, the two provisions "are as different as chalk is from cheese."  *Id.* at 1189.  Just because the lawyer in *Arias* did not control the employee's wages and hours did not mean that the lawyer could not have retaliated against the employee.  The Court concluded that "Congress clearly mean[t] to extend section 215(a)(3)'s reach beyond actual employers."  *Id.* at 1191–92.

The Court declines to follow *Arias*.  The *Arias* court placed weight on Congress's choice of the word "person" as opposed to "employer" in defining the scope of Section 215(a)(3).  *See id.* at 1189–90.  But it gave only short shrift to the fact that when Congress decided the penalties available for a violation of Section 215(a)(3), it expressly distinguished between "employers" and "persons" and provided that only "employers" who were liable for Section 215(a)(3) violations and not all other persons who committed such violations were subject to a private right of action.  Other "persons" were at risk of criminal penalties.  The *Arias* court also reasoned that the term "employer" should be given different meaning and different application when a retaliation provision was allegedly violated rather than when a wage-and-hour provision was, and it stated that its interpretation of Section 216(b) "is limited to retaliation claims" and "d[id]

not make non-actual employers like [the lawyer] liable in the first instance for any of the substantive wage and hour economic provisions listed in the FLSA." *Id.* at 1192.  But the Supreme Court has long held that courts should apply the presumption that "identical words used in different parts of the same statute . . . have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005); *see also Sorenson v. Secretary of Treasury of U.S.*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that 'identical words used in different parts of the same act are intended to have the same meaning.'" (quoting *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934))).  Section 216(b) first provides that an "employer" who violates the minimum wage or overtime provisions of FLSA "shall be liable to the employee or employees affected" in the amount of their unpaid minimum wages or overtime, before—in its second sentence—the provision states that an employer who violates Section 215(a)(3) is liable for legal or equitable relief, and in its third sentence stating that an employer who is liable for violating the tip-credit provisions is liable for the tip credit.  Thus, the very structure of Section 216 confirms that Congress meant "employer" to have a uniform meaning regardless whether the claim at issue is one for unpaid minimum wages or overtime or for retaliation.  Indeed, the statutory text reflects that Congress carefully distinguished between "persons" against whom criminal penalties were available and the more limited subset of employers against whom a private action would lie, and courts "normally presume that, where words differs as they differ here, 'Congress acts intentionally and purposefully in the disparate inclusion or exclusion.'" *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62–63 (2006) (quoting *Russello v. United States*, 4643 U.S. 16, 23 (1983)).

The *Arias* court also reasoned from Congress's remedial and humanitarian purpose that the reach of the private right of action should be extended to the lawyer who exercised no

economic control over the workplace. But the Supreme Court and Second Circuit have directed district courts to discern the congressional intent of FLSA from statutory test rather than from broad remedial goals. *Mei Xing Yu v. Hasaki Restaurant, Inc.*, 944 F.3d 395, 412 (2d Cir. 2019) (citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 12 (2014)). "Appeals to broad remedial goals and congressional purpose are not a substitute for the actual text of the statute when it is clear." *Id.* Thus, "'it is quite mistaken to assume . . . that "whatever" might appear to "further the statute's primary objective must be the law."'" *Id.* at 413 (quoting *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017)). It is a "flawed premise that the FLSA pursues its remedial purpose at all costs." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (internal quotation marks omitted) (quoting *Am. Express Co. v. Italian Colors Rest.* 570 U.S. 228, 234 (2013)).

*Arias* relied on the Supreme Court's decision in *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) for the proposition that FLSA's wage-and-hour provisions should be given different meaning from FLSA's anti-retaliation provisions. But, even accepting that premise, it does not help Plaintiff here with respect to whether FLSA's reference to "employer" in the portion of Section 216(b) that addresses claims under Section 215(a)(3) should be understood differently than Congress's reference to that same term elsewhere in the statute. *Burlington Northern* involved the question whether actions and harms forbidden by Title VII's anti-retaliation provision were limited to the adverse personnel actions addressed by the substantive anti-discrimination provisions of the statute. The Court answered that question in the negative. Reading the statutory language closely, the Court noted that "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64. The substantive anti-discrimination provisions

of Title VII prohibit discrimination "with respect to . . . compensation, terms, conditions, or privileges of employment," while the anti-retaliation provisions eliminate that qualifying language.  *Id.* at 62.  The Court's decision in *Burlington Northern* that anti-retaliatory acts were not limited to those affecting the terms and conditions of employment thus did not rest upon its independent determination as to what would best secure Congress's objectives but on its conclusion from "what [statutory] language already indicates" as to what Congress believed would best secure its objectives.  *Id.* at 64.  Applying that same mode of analysis here, it may be that—as courts have concluded—the reach of Section 215(a)(3) extends beyond the reach of the substantive wage-and-hour provisions:  It extends, for example, to employers who are not engaged in commerce. [6]  It is equally inescapable, however, that Congress concluded its objectives would be best served by extending criminal liability to all persons who engage in prohibited retaliation while limiting the private remedy to be only against employers who engage in such retaliation.[7]

---

[6] *Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1136 (10th Cir. 2018) is not on point. Defendants in that case unquestionably were employers.  The question was whether FLSA's prohibition on retaliation applied regardless whether the employer qualified as an enterprise engaged in commerce.  Applying a plain-language approach, the court observed that the statute distinguished between overtime claims which could be brought only by a person who was employed in an enterprise engaged in commerce and the anti-retaliation provisions which did not contain a similar reference to engagement with commerce.  Accordingly, the anti-retaliation provisions applied regardless whether the employer was engaged in commerce.  That same plain-language approach supports the Lee Defendants here.

[7] The other cases cited by Plaintiff for the proposition that a defendant can be liable in a private action for FLSA retaliation do so with little to no analysis of the language of Section 216(b).  *See Braxton v. Jackson*, 2019 WL 4573381, at *7 (D. Md. Sept. 20, 2019) (holding that a defendant who directed a lawyer to file retaliatory documents in court could be held liable without meeting the definition of an employer based on the statutory language of Section 215(a)); *Berglund v. Canyon Cty.*, 2020 WL 1066306, at *2 (D. Id. Mar. 4, 2020) (citing *Arias* and Section 215(a)(3) to support proposition that anti-retaliation claims are not limited to employers); *Seong Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d 748, 751 n.5 (S.D. Tex. 2019) (containing dicta that Section 215(a)(3) "includes retaliators who may not qualify as an employee's actual 'employer' for purposes of the Act's overtime pay requirements").

For substantially the same reasons, the Court rejects Plaintiff's argument that "employer" should be given a different definition when applied to private claims brought for violations of Section 215(a)(3) than it should be given when applied to private claims under the FLSA's wage-and-hour provisions.  Section 216(b) differentiates between retaliation claims and wage-and-hour claims only on the basis of the relief available and not on the basis of the party subject to suit.  Although persons who are not employers may be subject to civil sanctions in actions by the Secretary of Labor and may be subject to criminal sanctions in actions brought by the Department of Justice, they are not subject to damages in private actions brought by employees.

Finally, the Court's construction of the term "employer" under the FLSA and its application to retaliation claims under that statute is dispositive of Plaintiff's claims under the NYLL.  The NYLL defines "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as employer." N.Y. Lab. Law. §§ 190(3), 651(6). The definition of "employed" under the NYLL is that a person is "permitted or suffered to work."  *Id.* § 2(7).  "'[D]istrict courts in this Circuit have consistently interpreted the definition of "employer" under the New York Labor Law coextensively with the definition used by the FLSA.'"  *Inclan v. New York Hospitality Group, Inc.*, 95 F.Supp.3d 490, 511 (S.D.N.Y. 2015) (quoting *Ho v. Sim Enters. Inc.*, 2014 WL 1998237, at *10 (S.D.N.Y. May 14, 2014)); *see also Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010). Plaintiff does not argue here that the term "employer" should be given any different meaning under the NYLL than it is given under the FLSA.

### III.    The Conduct Alleged in the Complaint Does Not Give Rise to a Claim for Relief

Both sets of defendants argue that the complaint should be dismissed because the conduct alleged in the complaint regarding questions asked during a deposition and the filing of

counterclaims does not constitute retaliation as a matter of law.  That argument too is meritorious, and the complaint will be dismissed without prejudice against the KCD Defendants. It will be dismissed with prejudice against the Lee Defendants.

Section 215(a)(3) of FLSA makes it unlawful "to discharge of in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]."  29 U.S.C. § 215(a)(3).  The Second Circuit has held that retaliation claims under the FLSA are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).  "[A] plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."  *Id.*; *see also Velazquez v. Yoh Servs., LLC*, 803 F. App'x 515, 517 (2d Cir. 2020) (summary order).  The standard for an employment action disadvantaging plaintiff is identical to that under Title VII:  "An employment action disadvantages an employee if 'it well might have dissuaded a reasonable worker form making or supporting [similar] charges.'" *Mullins*, 626 F.3d at 53 (quoting *Burlington Northern*, 548 U.S. at 68).

Defendants do not dispute that Plaintiff has adequately alleged participation in a protected activity known to Defendants.  Plaintiff filed a FLSA lawsuit.  *See Chan v. Big Geyser, Inc.*, 2018 WL 4168967, at *11 (S.D.N.Y. Aug. 30, 2018); *Li v. Oliver King Enterps., Inc.*, 2015 WL 4643145, at *2 (S.D.N.Y. Aug. 4, 2015).  If Defendants retaliated against Plaintiff for filing the lawsuit or to prevent him from continuing to prosecute it, they would have committed a violation of Section 215(a)(3).

The courts in this Circuit have held that the filing of "baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions." *Torres v. Gristedes Operating Corp.*, 628 F. Supp. 2d 447, 472 (E.D.N.Y. 2008); *see also Rodriguez v. National Golf Links of America*, 2020 WL 3051559, at *3 (E.D.N.Y. June 8, 2020) ("District courts in this Circuit are also clear that 'the filing of a baseless lawsuit can be an adverse action' within the meaning of FLSA retaliation." (citing *Nunez v. Metro. Learning Inst., Inc.*, 2019 WL 5457731, at *1 (E.D.N.Y. Oct. 24, 2019))); *Chan v. Big Geyser, Inc.*, 2018 WL 4168967, at *11 (S.D.N.Y. Aug. 30, 2018) ("[C]ourts have held that filing baseless counterclaims against FLSA plaintiffs can, under certain circumstances, constitute adverse employment action sufficient to state a claim for retaliation." (internal quotation marks omitted)).  That is because "[b]ad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights [have an] *in terrorem* effect." *Torres*, 628 F. Supp. 2d at 473.  To sustain a claim of retaliation based on the filing of a lawsuit or a counterclaim, the plaintiff must allege both that the lawsuit or counterclaim was filed both "with a retaliatory motive" and that it was filed "without a reasonable basis in fact or law." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008); *see also Khalid v. DJ Shirley 1 Inc.*, 2019 WL 325127, at *2 (E.D.N.Y. Jan. 25, 2019) (recommending dismissal of retaliation claim where plaintiff made only conclusory allegations that state court lawsuit contained false allegations and were brought in retaliation); *Pawlowski v. Kitchen Expressions Inc.*, 2017 WL 10259773, at *5 (E.D.N.Y. Dec. 15, 2017) ("[O]nly if a counterclaim is baseless can it constitute retaliation under employment law."); *Nunez v. Metro. Learning Inst., Inc.*, 2021 WL 1176219, at *4 (E.D.N.Y. Mar. 29, 2021) (noting potential constitutional concerns with retaliation claims premised on non-frivolous counterclaims given that "the First Amendment generally protects the

right of private citizens to file lawsuits"); *cf. Sherman v. Fivesky, LLC*, 2020 WL 5105164, at

*6–7 (S.D.N.Y. Aug. 31 2020) (applying same principles in Title VII context and denying

motion to amend to add claim of retaliation based on litigation conduct that was not objectively

baseless and was not the result of a discriminatory or retaliatory intent).  Absent both elements,

such a claim would raise First Amendment issues.  *See BE & K Constr. Co. v. NLRB*, 536 U.S.

516, 528–37 (2002).

      Plaintiff's allegations fail to satisfy that test.  Plaintiff's allegations with respect to the

deposition do not establish a "retaliatory motive," or that the Defendants took action that was

"objectively baseless."  Lee asked the questions at deposition whether Plaintiff understood that

his actions constituted theft and were improper and illegal only after Plaintiff admitted to

copying documents from his employer's computer and retaining them after he ceased his

employment.  There is no basis to assume that the questions were asked to retaliate against

Plaintiff for filing the Wage Case or to deter him from prosecuting it rather than to develop

evidence by which the Defendants in that case could defend against the allegations.  "The

*Burlington Northern* test looks to whether, in context, the challenged conduct 'might well have

dissuaded a reasonable worker from making or supporting a charge of discrimination.'"

*Sherman, LLC*, 2020 WL 5105164, at *6 (quoting *Burlington Northern*, 548 U.S. at 68).  "[N]o

reasonable employee should expect that the employer-defendant would simply surrender in the

face of litigation.  Although the threat of a vigorous defense . . . might well cause an employee to

think carefully about whether to start litigation, at all, that threat is not the 'retaliation' that

Congress had in mind in crafting the retaliation provisions of [the FLSA]."  *Id.*  "[It] is simply a

function of litigation, in which both sides get to present their case before a decision is made."  *Id.*

There also is nothing objectively baseless, in bad faith, or groundless about Defendants asking, in a deposition, questions of Plaintiff about the taking of the documents.  By filing the Wage Case, Plaintiff subjected himself to oral examination by Defendants.  *See* Fed. R. Civ. P. 30.  Under the rules, the deposition could proceed as it would at trial, *see* Fed. R. Civ. P. 30(c), and could cover "any nonprivileged matter that [was] relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1).  There would be nothing improper about the Defendants in the Wage Case inquiring into the provenance of the documents or how Plaintiff was still in possession of them.  According to Plaintiff's allegations, the documents are among those he will use to support his claims in that case.  Compl. ¶ 9.  Likewise, there was nothing wrong in Defendants asking whether Plaintiff understood or knew his conduct to be improper or illegal or to constitute theft.  The deposition questions did not accuse Plaintiff of criminal conduct; they asked him whether he understood his conduct to be criminal.  Among other things, such questions go directly to Plaintiff's conduct while he was an employee and whether there are specific instances of Plaintiff's conduct that go to his character for truthfulness and thus at least arguably would be relevant to attack his credibility on cross-examination.  *See* Fed. R. Evid. 608(b).

Drawing all reasonable inferences from the complaint, Plaintiff has alleged that the filing of the counterclaims was done with a retaliatory motive.  The counterclaims were filed while Plaintiff was aggressively litigating the Wage Case.  Plaintiff alleges that the documents he took and retained consisted of those that would be necessary to prove that he and others had worked overtime hours without receiving overtime pay.  According to Plaintiff's allegations, his employer faces no competitive threat from his taking or disclosing the documents; Plaintiff alleges the defendants in the Wage Case suffered no damages.  Compl. ¶ 42.  Congress intended "to ensure widespread compliance" with FLSA; "silencing the employee who had vindicated a

disputed FLSA right" is inconsistent with that intent. *Lopez v. Nights of Cabria, LLC*, 96 F. Supp. 3d 170, 179 (S.D.N.Y. 2012) (internal quotation marks omitted) (refusing to approve settlement with confidentiality provisions), cited with approval in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert denied*, 577 U.S. 1067 (2016). A reasonable factfinder could conclude that the counterclaims were filed to punish Plaintiff for prosecuting the Wage Case and for sharing the documents with others who could similarly use the documents to prosecute their own claims for wage-and-hour violations.

Plaintiff, however, has not alleged facts to establish that the two counterclaims at issue were objectively baseless. He does not deny the principal allegations of the counterclaims. The documents at issue belonged to the KCD Defendants. Plaintiff does not dispute that he took them while he was employed by KCD. Nor does he dispute that he lacked permission to take the documents and that he took the documents without the KCD Defendants' knowledge. He invoked his Fifth Amendment privilege in response to questions whether he had such permission. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (noting "the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions"). He also does not dispute in this case either that the documents contained confidential and proprietary information belonging to the KCD Defendants including sales, accounting, human-resources matters, future business plans and the immigration status of the KCD Defendants' employees. Finally, he does not deny the allegations of the counterclaim that he signed a non-disclosure and confidentiality agreement, pursuant to which he agreed to keep confidential information regarding personnel, suppliers, costs of production, finances, business plans, and customer lists and contact information, nor does he deny that that his conduct violated that agreement.

Defendants' second cause of action, denominated, "theft or misappropriation," sounds in conversion.[8]  "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006).  Its key elements are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it in derogation of plaintiff's rights."  *Id.* at 50 (internal citations omitted); *see also Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012).  Under the law of New York, an electronic record stored on a computer is subject to a claim of conversion.  *Thyroff v. Nationwide Mutual Ins. Co.*, 8 N.Y.3d 283, 292–93 (2007); *see also People v. Alynikov*, 31 N.Y. 3d 383, 401 (2018) ("*Thryoff* is best read . . . as treating the allegedly converted information as intangible property." (emphasis omitted)).  There is authority that a conversion claim does not lie where the defendant's copying of electronic files containing confidential and proprietary information is not to the exclusion of the rights of the owner.  *See Capricorn Management Sys., Inc. v. Gov. Employees Ins. Co.*, 2019 WL 5694256, at * 19 (E.D.N.Y. July 22, 2019) (holding that defendants must have exercised unauthorized dominion to the exclusion of the plaintiff's rights as an owner); *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 414 (S.D.N.Y. 2018) (no conversion where misappropriation the plaintiff is not denied use of original files); *Center for Rheumatology, LLP v. Shapiro*, 65 Misc. 3d 1205(A), at *8 (Sup. Ct. Albany Cty. Sept. 19, 2019).  However, there are at least "scattered decisions that suggest that copying of data may constitute conversion."  *Fischkoff*, 339 F. Supp. 3d at 415 (citing *Clark St. Wine & Spirits v. Emporos Sys. Corp.*, 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010)); *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 618 (S.D.N.Y. 2003); and

---

[8] The second counterclaim does not allege theft or misappropriation of trade secrets.

*New York Racing Ass'n v. Nassau Regional Off-Track Betting Corp.*, 29 Misc. 3d 539, 545–46 (Sup. Ct. Nassau Cty. 2010)).  The Court cannot say that the allegations of the second counterclaim are not at least "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2); *see Pawlowski*, 2017 WL 10259773 at *5 ("A counterclaim cannot . . . constitute an adverse employment action unless it is frivolous."); *see also Ozawa v. Orsini Design Assocs., Inc.*, 2015 WL 1055902 at *10 (S.D.N.Y. Mar. 11, 2015); *Karlin v. MCS Mortg. Bankers, Inc.*, 2019 WL 1586861, at *4 (E.D.N.Y. Apr. 12, 2019) (denying motion to amend to add retaliation claims where conclusory assertions were insufficient to plead that defendants' counterclaims were baseless).

The claim for breach of the confidentiality and non-disclosure agreement is on even more secure footing.  New York has "a compelling interest in the maintenance of domestic peace" and in "providing a civil remedy for conduct touching interests 'deeply rooted in local feeling and responsibility.'" *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 741–42 (construing NLRA not to reach retaliatory state court lawsuits unless they are objectively baseless "in recognition of the States' compelling interest[s]" (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244 (1959))).  Among those interests is that agreements freely reached between contracting parties be honored.  Plaintiff does not dispute in his complaint that he was bound by the confidentiality and non-disclosure agreement or that the documents that he took from his employer, kept, and gave to others fall within the scope of the documents he agreed to keep confidential.  More importantly, he does not allege that Defendants' view that the documents he kept and gave to others were subject to the confidentiality agreement was objectively baseless.  Plaintiff does not claim that he innocently acquired the documents.

*Compare Kempcke v. Monsanto Co.*, 132 F.3d 442, 446 (8th Cir. 1998) (holding that employee's conduct in retaining documents that were innocently acquired and directing employer to his counsel for return of documents was protected activity under the Age Discrimination in Employment Act ("ADEA")), *with Netter v. Barnes*, 908 F.3d 932, 939 (4th Cir. 2018) (holding that employee's unauthorized inspection and copying of personnel files did not constitute protected activity under Title VII); *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (holding that conduct was not protected under ADEA because "O'Day committed a serious breach of trust, not only in rummaging through his supervisor's office for confidential documents, but also in copying those documents and showing them to a co-worker").

Plaintiffs' only allegations are that his intent in taking the documents was to prove his case and that Defendants did not suffer damages from his conduct.  Compl. ¶¶ 28–30, 42.  Those allegations do not demonstrate that the legal theory of the counterclaim is objectively baseless.  If Plaintiff desired to obtain evidence to prove his wage-and-hour claim, the answer was not to take those documents from the KCD Defendants' computer without authorization but to use his knowledge and the ordinary rules of discovery.  There is generally no good-motive intent defense to a claim for breach of contract.  *See* Restatement (Second) Contracts 16, Introductory Note (explaining that, traditionally, the law of contract remedies focuses on the "pecuniary aspects of breach" instead of "moral obligation[s] to honor one's promises" and observing that "'willful' breaches have not been distinguished from other breaches"); *cf. id.* § 7, comment *b* ("Typical instances of voidable contracts are those where one party was an infant, or where the contract was induced by fraud, mistake, or duress, or where breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract."); *id.* § 261 (explaining

that a duty to abide by a contract may be discharged where the performance is made

impracticable).  Moreover, although Plaintiff alleges that Defendants did not suffer damages

from his breach, he does not allege that any contrary view by Defendants would be objectively

baseless.  Importantly, the Federal Rules of Civil Procedure do not require a complaint to itemize

the plaintiff's damages.  *See Canino v. Barclays Bank, PLC*, 1998 WL 7219, at *7 (S.D.N.Y.

Jan. 7, 1998) ("Except where the damages sought are unusual for the type of claim in question, a

plaintiff need not itemize his damages in his complaint.").  Equally importantly, under New York

law:

> if the plaintiff establishes the making of a contract and a breach thereof, he or she
> is entitled to at least nominal damages, even though his or her complaint fails to
> allege damages or states an erroneous measure of damages or the breach of contract
> caused no loss or the amount of the loss cannot be proven with sufficient certainty.

36 N.Y. Jur. 2d Damages § 4 (Nov. 2021); *see also Maalouf v. Citigroup Global Markets, Inc.*,

156 F. App'x 367 (2d Cir. 2005) (summary order); *Freund v. Washington Square Press, Inc.*, 34

N.Y.2d 379, 384 (1974) (nominal damages are "awarded as a formal vindication of plaintiff's

legal right to compensation which has not been given a sufficiently certain monetary valuation").

The point is not that the counterclaim would survive a motion to dismiss or that Plaintiff lacked

justification in keeping the documents.  The Court need not consider that issue.  The point is that

it was not wrongful for Defendants to allege that Plaintiff's conduct was wrongful and in breach

of contract.  Nor was it wrong to leave it to the courts to sort out how to balance the competing

considerations between the Defendants' interest in confidentiality and the Plaintiff's interest in

ensuring that evidence of misconduct is preserved.

It thus was not wrongful in violation of the FLSA for the Defendants here—when they acquired evidence of Plaintiff's breach of contract—to bring an action asserting their rights based on that breach of contract.[9]

## CONCLUSION

The motion to dismiss the complaint against the KCD Defendants is GRANTED and the complaint is dismiss without prejudice.  The motion to dismiss the complaint against the Lee Defendants is GRANTED and the complaint as against the Lee Defendants is dismissed with prejudice.  The Lee Defendants are not employers as a matter of law and any amendment of the complaint against them would be futile.

The Clerk of Court is respectfully directed to close Dkt. Nos. 25 and 28.  The Clerk of Court is further directed to amend the caption as stated above.

SO ORDERED.

Dated: December 20, 2021
          New York, New York

LEWIS J. LIMAN
United States District Judge

---

[9] It does not make a difference that the magistrate judge recommended that Defendants not be permitted to amend their counterclaims in the Wage Case and that Judge Ross accepted that recommendation.  Some courts have held that a retaliation claim can be maintained when the allegedly retaliatory lawsuit has been dismissed.  *See Nunez v. Metropolitan Learning Institute, Inc.*, 2019 WL 5457731, at *2 (E.D.N.Y. Oct. 24, 2019) (holding that plaintiff plausibly alleged that state lawsuit was baseless when it was dismissed); *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 942 F. Supp.2d 274, 278–79 (E.D.N.Y. 2013) (permitting amendment of complaint to allege counterclaim was retaliatory where counterclaim was dismissed).  But, in this case, the magistrate judge based his recommendation on the conclusion that supplemental jurisdiction would be lacking, and a dismissal for lack of subject matter jurisdiction is not an adjudication of the merits.  *See St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000).